1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11   DENNIS C,[1]                    | Case No. SACV 19-02061-AS

12              Plaintiff,

13        v.                          | **MEMORANDUM OPINION AND ORDER**
                                      | **AFFIRMING COMMISSIONER**
14   ANDREW M. SAUL, Commissioner
     of Social Security,

15

16              Defendant.

17

18        For the reasons discussed below, IT IS HEREBY ORDERED that,

19   pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's

20   decision is affirmed.

21

22

23

24   _____

25        [1]    Plaintiff's name is partially redacted in accordance with
     Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation
26   of the Committee on Court Administration and Case Management of
     the Judicial Conference of the United States.
27

28

1  **PROCEEDINGS**

2

3      On October 29, 2019, Plaintiff filed a Complaint Seeking

4  review of the Commissioner's denial of Plaintiff's application for

5  disability insurance benefits ("DIB"). (Dkt. No. 1).  The parties

6  have consented to proceed before the undersigned United States

7  Magistrate Judge. (Dkt. Nos. 13-14). On March 25, 2020, Defendant

8  filed an Answer along with the Administrative Record ("AR"). (Dkt.

9  Nos. 17-18).  On June 18, 2020, the parties filed a Joint

10 Stipulation ("Joint Stip.") setting forth their respective

11 positions regarding Plaintiff's claim.  (Dkt. No. 19).

12

13      The Court has taken this matter under submission without oral

14 argument.  See C.D. Cal. L.R. 7-15.

15

16            **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

17

18      On February 29, 2016, Plaintiff, formerly employed as a sales

19 associate at Wal-Mart[2] (see AR 94, 96-97), filed an application for

20 DIB, alleging a disability onset date of February 16, 2016.[3]  (AR

21

22      [2]    Plaintiff worked as a courier from July 1998 through
   January 2011, before working at Wal-Mart in 2013 as a sales
23 associate, and  subsequently working as a sales associate in Wal-
   Mart's claims department and, in October 2015, a sales associate
24 in Wal-Mart's sporting goods department.  (AR 88, 90, 94, 96).
   Plaintiff returned to Wal-Mart in 2017 in the position of host
25 whose duties included  greeting customers.  (AR 97).

26
       [3]    Plaintiff had previously filed an application for DIB
27 on February 20, 2012 and was found to be disabled from March 7,
   2011 through October 1, 2013.  (See AR 123-134).
28

234-35).  Plaintiff's applications were denied initially on April 5, 2016 (AR 156-59), and on reconsideration on June 28, 2016 (AR 165-69).

On August 1, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Kenneth Ball. (See AR 76, 79-86, 88-98, 101). The ALJ also heard testimony from vocational expert Kathleen Spencer. (See AR 86-87, 89, 97-100).

On August 15, 2018, the ALJ issued a decision denying Plaintiff's applications. (See AR 25-34). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had engaged in substantial gainful activity ("SGA") from June 29, 1017 through January 16, 2018 and denied Plaintiff's claim for that period. (AR 28). However, the ALJ found that Plaintiff had not engaged in SGA from Plaintiff's alleged onset date of February 16, 2016 through June 28, 2017, and from January 17, 2018 through the date of the ALJ's decision, August 15, 2018[4]. (Id.).

At step two, the ALJ found that Plaintiff had the following severe impairment: lumbar spine degenerative disc disease, status post-surgery on February 16, 2016. (AR 28).

---

[4]   Plaintiff's claim for disability benefits are primarily concerned with the disability period between February 16, 2016 to June 28, 2017. (See Joint Stip. at 4).

1    At step three, the ALJ determined that Plaintiff did not have

2 an impairment or combination of impairments that meets or medically

3 equals the severity of any listing found in 20 C.F.R. Part 404,

4 Subpart P, Appendix 1.[5]  (AR 28).  The ALJ then found that Plaintiff

5 had the Residual Functional Capacity ("RFC")[6] to perform light work[7]

6 with the following limitation: "occasionally perform postural

7 activities."  (AR 29).

8

9    At step four, the ALJ determined that Plaintiff was able to

10 perform past relevant work as a "deliverer, outside" and sales

11 attendant as those jobs are generally performed, but not as

12 actually performed by plaintiff, past relevant work as a host[8] both

13 as actually and generally performed, considering Plaintiff's RFC

14 with the physical and mental demands of Plaintiff's past work

15 experience.  (AR 33).  Accordingly, the ALJ found that Plaintiff

16 had not been under a disability, as defined in the Social Security

17

18

19 ───────────────────

    [5]    The ALJ specifically considered whether Plaintiff's
20 medically determinable impairment meets the requirements of Listing
   1.04 (disorders of the spine) and concluded that it did not.  (AR
21 28).

22    [6]    A Residual Functional Capacity is what a claimant can
   still do despite existing exertional and nonexertional limitations.
23 See 20 C.F.R § 404.1545(a)(1).

24    [7]    "Light work involves lifting no more than 20 pounds at
25 a time with frequent lifting or carrying of objects weighing up to
   10 pounds." See 20 C.F.R. § 404.1567(b).
26
    [8]    The ALJ noted that Plaintiff was employed as a host from
27 June 29, 2017 to January 16, 2018 and therefore this position was
   only considered past relevant work since January 17, 2018.
28

4

1   Act, from the alleged disability onset, February 16, 2016, to

2   August 15, 2018, the date of the decision. (Id.).

3

4       On September 4, 2019, the Appeals Council denied Plaintiff's

5   request to review the ALJ's decision. (See AR 1-6). Plaintiff

6   now seeks judicial review of the ALJ's decision, which stands as

7   the final decision of the Commissioner. See 42 U.S.C. §§ 405(g),

8   1383(c).

9

10   **STANDARD OF REVIEW**

11

12       This Court reviews the Commissioner's decision to determine

13   whether the findings are supported by substantial evidence and

14   whether proper legal standards were applied. 42 U.S.C § 405(g);

15   Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012).

16   "Substantial evidence" is more than a mere scintilla, but less than

17   a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir.

18   2014). To determine whether substantial evidence supports a

19   finding, "a court must consider the record as a whole, weighing

20   both evidence that supports and evidence that detracts from the

21   [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033,

22   1035 (9th Cir. 2001)(internal quotation omitted). As a result,

23   "[i]f the evidence can support either affirming or reversing the

24   ALJ's conclusion, [a court] may not substitute [its] judgment for

25   that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882

26   (9th Cir. 2006).

27

28

1

2

<b>PLAINTIFF'S CONTENTION</b>

3

   Plaintiff contends that the ALJ erred in failing to properly
4
evaluate Plaintiff's subjective symptom testimony. (<u>See</u> Joint
5
Stip. at 4-9; 20-23). As set forth above, Plaintiff is primarily
6
concerned with the period of disability between February 2016 to
7
June 2017. (Joint Stip. at 4).

8

9

<b>DISCUSSION</b>

10

11

   After consideration of the record as a whole, the Court finds
12
that the Commissioner's findings are supported by substantial
13
evidence and are free from legal error.[9]

14

15
**A.   The ALJ Provided Clear and Convincing Reasons for**
16
**       Discrediting Plaintiff's Subjective Symptom Testimony**

17

18
   Plaintiff asserts that the ALJ did not provide clear and
19
convincing reasons for rejecting Plaintiff's subjective symptom
20
testimony. (<u>See</u> Joint Stip. at 4-9; 20-23). Defendant asserts
21
that the ALJ provided proper reasons for finding Plaintiff's

22

23

24

25
----
        [9]   The harmless error rule applies to the review of
26
administrative decisions regarding disability. <u>McLeod v. Astrue</u>,
27
640 F.3d 881, 886-88 (9th Cir. 2011); <u>see</u> <u>Burch v. Barnhart</u>, 400
F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be
28
reversed for errors that are harmless).

6

1  subjective testimony not fully credible. (See Joint Stip. at 9-

2  23).[10]

3

4        1.    Legal Standard

5

6        When assessing a claimant's credibility regarding subjective

7  pain or intensity of symptoms, the ALJ must engage in a two-step

8  analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).

9  First, the ALJ must determine if there is medical evidence of an

10 impairment that could reasonably produce the symptoms alleged.

11 Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this

12 analysis, the claimant is not required to show that her impairment

13 could reasonably be expected to cause the severity of the symptom

14 she has alleged; she need only show that it could reasonably have

15 caused some degree of the symptom." Id. (emphasis in original)

16 (citation omitted). "Nor must a claimant produce objective medical

17 evidence of the pain or fatigue itself, or the severity thereof."

18 Id. (citation omitted).

19

20       If the claimant satisfies this first step, and there is no

21 evidence of malingering, the ALJ must provide specific, clear and

22 convincing reasons for rejecting the claimant's testimony about

23 the severity of his or her symptoms. Trevizo, 871 F.3d at 678

24 (citation omitted); see also Smolen v. Chater, 80 F.3d 1273, 1284

25 (9th Cir. 1996) ("[T]he ALJ may reject the claimant's testimony

26 regarding the severity of her symptoms only if he makes specific

27  _____

28

1  findings stating clear and convincing reasons for doing so.");
2  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)
3  ("[U]nless an ALJ makes a finding of malingering based on
4  affirmative evidence thereof, he or she may only find an applicant
5  not credible by making specific findings as to credibility and
6  stating clear and convincing reasons for each."). "This is not an
7  easy requirement to meet: The clear and convincing standard is the
8  most demanding required in Social Security cases." Garrison, 759
9  F.3d at 1015 (citation omitted).

10

11     Where, as here, the ALJ finds that a claimant suffers from a
12  medically determinable physical or mental impairment that could
13  reasonably be expected to produce the alleged symptoms, the ALJ
14  must evaluate "the intensity and persistence of those symptoms to
15  determine the extent to which the symptoms limit an individual's
16  ability to perform work-related activities for an adult." Soc.
17  Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[11]  SSR 16-3p
18  superseded SSR 96-7p and eliminated the term "credibility" from
19  the Agency's sub-regulatory policy. However, the Ninth Circuit has
20  noted that SSR 16-3p:

21

22     makes clear what [the Ninth Circuit's] precedent already
23     required: that assessments of an individual's testimony

24
       _____

25     [11]    SSR 16-3p, which superseded SSR 96-7p, is applicable to
    this case, because SSR 16-3p, effective on March 28, 2016, was in
26  effect at the time of the Appeal Council's September 4, 2019 denial
    of Plaintiff's request for review.  Nevertheless, the regulations
27  on evaluating a claimant's symptoms, including pain, see 20 C.F.R.
    § 404.1529, have not changed.
28

1    by an ALJ are designed to "evaluate the intensity and

2    persistence of symptoms after the ALJ finds that the

3    individual has a medically determinable impairment(s)

4    that could reasonably be expected to produce those

5    symptoms, and not to delve into wide-ranging scrutiny of

6    the claimant's character and apparent truthfulness.

7

8    Trevizo, 871 F.3d at 679 n.5 (quoting SSR 16-3p) (alterations

9    omitted).

10

11   In discrediting the claimant's subjective symptom testimony,

12   the ALJ may consider: "ordinary techniques of credibility

13   evaluation, such as . . . prior inconsistent statements concerning

14   the symptoms, and other testimony by the claimant that appears less

15   than candid; unexplained or inadequately explained failure to seek

16   treatment or to follow a prescribed course of treatment; and the

17   claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154,

18   1163 (9th Cir. 2014) (citation omitted). Inconsistencies between

19   a claimant's testimony and conduct, or internal contradictions in

20   the claimant's testimony, also may be relevant. Burrell v. Colvin,

21   775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin.,

22   119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may

23   consider the observations of treating and examining physicians

24   regarding, among other matters, the functional restrictions caused

25   by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord

26   Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to

27   reject subjective testimony based "solely" on its inconsistencies

28   with the objective medical evidence presented. Bray v. Comm'r of

9

1   Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation

2   omitted).

3

4      The ALJ must make a credibility determination with findings

5   that are "sufficiently specific to permit the court to conclude

6   that the ALJ did not arbitrarily discredit claimant's testimony."

7   Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation

8   omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir.

9   2015) ("A finding that a claimant's testimony is not credible must

10   be sufficiently specific to allow a reviewing court to conclude

11   the adjudicator rejected the claimant's testimony on permissible

12   grounds and did not arbitrarily discredit a claimant's testimony

13   regarding pain.") (citation omitted). Although an ALJ's

14   interpretation of a claimant's testimony may not be the only

15   reasonable one, if it is supported by substantial evidence, "it is

16   not [the court's] role to second-guess it." Rollins v. Massanari,

17   261 F.3d 853, 857 (9th Cir. 2001).

18

19     2.  Plaintiff's Subjective Statements and Testimony

20

21      Plaintiff had lumbar fusion surgery at L5-S1 on February 16,

22   2016. (AR 345). On May 21, 2016, Plaintiff submitted an Exertion

23   Questionnaire, providing the following information: (1) the

24   symptoms preventing Plaintiff from carrying out normal workday

25   activities were "pain in lower back when standing walking or

26   sitting for longer than 20 to 30 minutes at a time, lack of sleep

27   due to pain when pains meds wear off + weakness + fatigue from

28   normal activities + chores" (AR 282); (2) light cooking, washing

dishes, light sweeping or vacuuming, small loads of laundry and walking in nearby parks were among the daily activities that caused weakness and fatigue after ten minutes; (3) Plaintiff experienced lower back pain while standing, walking or light lifting and pushing or pulling objects less than ten pounds and could climb one flight of stairs slowly while using the handrail and a cane, drive about 20 to 30 minutes at a time, between 5 to 15 miles with stops to rest, wash a car, check the car's fluid levels and tire pressure once or twice per month, and do light yard word for 10 to 20 minutes at a time, but these activities also caused lower back pain (AR 283); (4) Plaintiff needed to rest or nap 2-3 times a day, wore a back brace for lower back support and used a cane while walking; and (5) Plaintiff took the following medications: 300 mg of Gabapentin 3 times per day, 10 mg of Hydrocodone with 325 mg of Acetaminophen 2 times per day, and 10 mg Cyclobenzaprine and 15 mg of morphine at night.  (AR 284).

On June 10, 2016, Warren Yu, M.D., an orthopedic consultant examiner, reported that Plaintiff was happy with the results of his surgery and noted significant improvement.  (AR 494).  Upon examination, Dr. Yu observed that Plaintiff was able to move "freely in and out of the office" without the use of an assistive device, had a normal gait (AR 494-95), and found that Plaintiff was able to push and pull without limitations, sit, walk and stand for six hours out of an eight hour day with appropriate breaks. (AR 498).

1    Progress notes from Tien T. Nguyen, M.D., who performed
2    Plaintiff's surgery, indicated that Plaintiff generally used a
3    brace between March 2016 through June 2017 and only used a cane
4    through June 2016. (See AR 479 [March 3, 2016], 482 [June 6,
5    2016], 566 [August 31, 2016], 569 [November 30, 2016], 571-72
6    [February 15, 2017]). Plaintiff complained of pain, numbness and
7    tingling radiating into his right lower extremity. (See AR 479
8    [March 3, 2016], 566 [August 31, 2016], 570-71 [February 15,
9    2017]). In June 2017, Plaintiff reported only minimal pain with
10   prolonged activity. (See AR 572, 574-575).

11

12   At the August 1, 2018 hearing, Plaintiff testified to the
13   following: (1) he was currently taking both Cyclobenzaprine, a
14   muscle relaxer to treat muscle spasms, and extended release
15   morphine to help him sleep through the night without pain ; (2)
16   after the surgery, he could only manage to sit for 30 to 45 minutes
17   without having to lie down and would lie down on and off between 8
18   to 10 hours daily; (3) he has had no treatment since his surgery,
19   and was able to resume activity after the one-year mark of his
20   surgery in February 2016; (4) currently, his daily activities
21   consist of watching a lot of TV, lying down, vacuuming, washing
22   dishes and grocery shopping and his chores and errands do not take
23   more than two hours per day; (5) he has difficulty driving in
24   excess of 45 minutes due to lower back pain; and (6) Plaintiff
25   estimated he could currently be on his feet for up to four hours a
26   day. (AR 84-86).

27

28

1          3.   The ALJ's Credibility Findings

2

3      The ALJ found Plaintiff's testimony about the intensity,

4 persistence and limiting effects of his pain and symptoms to be

5 inconsistent with the medical evidence and other evidence in the

6 record, stating:

7

8          In sum, the above-specified residual functional

9      capacity reflects an analysis of all of the relevant

10     evidence in the record, which does not generally support

11     the claimant's statements regarding the alleged

12     intensity, persistence, and limiting effects of his

13     symptoms. Accordingly, the residual functional capacity

14     determined in this decision indicates the most that the

15     claimant could do despite his impairment-related

16     limitations.

17

18 (AR 32).

19

20     4.   Analysis

21

22      As set forth below, the ALJ provided specific, clear and

23 convincing reasons, supported by evidence in the record, to

24 discredit Plaintiff's complaints of pain and other symptoms.

25

26

27

28

1        a.   Improvement

2

3        The ALJ found that Plaintiff's symptoms improved following

4   surgery.  (See AR 29).  An ALJ can properly reject a plaintiff's

5   testimony where there is medical evidence of improvement after a

6   surgery.  See Fletcher-Silvas v. Saul, 791 Fed. Appx. 647, 649 (9th

7   Cir. 2019); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d

8   1001, 1006 (9th Cir. 2006)(evidence that a claimant's condition

9   is improving can support the ALJ's decision if "the severity of

10  the problem had decreased sufficiently to enable him to engage in

11  gainful activity."  The ALJ noted that four months after surgery,

12  Plaintiff told Dr. Yu, the consultative examiner that he was happy

13  with the results of his surgery and noted significant improvement

14  despite reporting residual back and gluteal pain.   (AR 30).

15  Although Plaintiff was taking pain medication and wearing a back

16  brace, he had a normal gait and did not use any assistive device

17  to ambulate.  (See AR 30, citing AR 494-95).  The ALJ also noted

18  that although a healed surgical scar was evident when Plaintiff's

19  lumbar spine was examined, there was no significant tenderness,

20  spasm, or atrophy, the straight leg raising was negative and the

21  neurological examination was "wholly unremarkable.[12]"  (See AR 30,

22  citing AR 496-97).

23

24       The AlJ also found that Dr. Nguyen, who saw Plaintiff

25  approximately every two to three months from March 2016 through

26  _____

27       [12]   The ALJ noted that because Plaintiff's surgeon had
    advised him not to bend, Plaintiff's range of motion was not
    evaluated.  (See AR 30, citing AR 496).

28

                                  14

June 2017, consistently indicated that Plaintiff was doing well. (See AR 30, citing AR 479 [March 3, 2016], 482 [June 6, 2016], 567 [August 31, 2016], 570 [November 30, 2016], 572 [February 15, 2017], 575 [June 12, 2017]). Although Plaintiff claims that the ALJ's findings regarding medical improvement were not supported by the three CT scans showing that Plaintiff's spine had not yet fused[13] (see Joint Stip. at 4, citing AR 516-17, 584), as Defendant points out, the partial fusion did not preclude Dr. Nguyen from finding that Plaintiff could work with certain restrictions – namely, that could lift up to 25 pounds (see AR 572 [February 25, 2017] and later up to 50 pounds (AR 575 [June 12, 2017]; see Joint Stip. at 16-17). To the extent the partial fusion impacted Plaintiff's symptoms, Dr. Nguyen opined that it was caused by Plaintiff's continued smoking[14]. (See AR 30, citing 479, 482, 566, 570-71, 575, 577-84).

   b.     Objective Medical Evidence

   The ALJ also found that Plaintiff's testimony about the intensity and limiting effects of his symptoms was not supported

---

[13]   To the extent there were conflicts in the record, it was the ALJ's duty to resolve any such conflicts. See Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017). ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."); see also DeLorme v. Sullivan, 924 F.2d 634, 638 (9th Cir. 1991) ("The ALJ has a duty to develop the record.").

[14]   See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

1    by the objective medical evidence. (See AR 30). See Burch v.

2    Barnhart , 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of

3    medical evidence cannot form the sole basis for discounting pain

4    testimony, it is a factor that the ALJ can consider in his

5    credibility analysis."); Rollins v. Massanari , 261 F.3d 853, 857

6    (9th Cir. 2001)("While subjective pain testimony cannot be rejected

7    on the sole ground that it is not fully corroborated by objective

8    medical evidence, the medical evidence is still a relevant factor

9    in determining the severity of the claimant's pain and its

10   disabling effects."); SSR 16-3p, *5 ("objective medical evidence

11   is a useful indicator to help make reasonable conclusions about

12   the intensity and persistence of symptoms, including the effects

13   those symptoms may have on the ability to perform work-related

14   activities").

15

16        As the ALJ pointed out, the medical records concerning

17   Plaintiff's back issues reflected only minimal, static examination

18   findings and consistently indicated that Plaintiff was doing well.

19   (See AR 30, citing AR 479 [March 3, 2016], 482 [June 6, 2016], 567

20   [August 31, 2016], 570 [November 30,2016], 572 [February 15, 2017],

21   574 [June 12, 2017]). Plaintiff's subjective testimony was also

22   not supported by the opinions of his various doctors who found that

23   Plaintiff was capable of working, including B. Vaghaiwalla, M.D.,

24   a State Agency medical consultant, (see AR 134-42 [April 4, 2016]),

25   Warren Yu, M.D., a board certified orthopedic surgeon, (see AR 494-

26   98 [June 10, 2016]), Karen Sarpolis, MD, a State Agency medical

27   consultant, (see AR 144-54 [June 27, 2016]), and Dr. Nguyen,

28

1  Plaintiff's treating doctor (see AR 572 [February 25, 2017], 575

2  [June 12, 2017]).

3

4      However, the objective medical record was not the sole basis

5  for the ALJ's rejection of Plaintiff's subjective symptom

6  testimony. As set forth above, the ALJ also found that the

7  improvement in Plaintiff's condition following surgery was

8  inconsistent with Plaintiff's claims regarding his inability to

9  work due to pain and other symptoms. The Court finds that the ALJ

10  offered clear and convincing reasons, supported by substantial

11  evidence in the record, for discounting Plaintiff's statements

12  regarding the limiting effects of his pain and symptoms.

13  Accordingly, no remand is required.

14

15                              **ORDER**

16

17      For the foregoing reasons, the decision of the Commissioner

18  is AFFIRMED.

19

20      LET JUDGMENT BE ENTERED ACCORDINGLY.

21

22  DATED: August 5, 2020

23                              _____/s/_____

24                              ALKA SAGAR
                                UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                              17